GRESHOW v. GRESHOW.

1. DIVORCE—HABITUAL DRUNKENNESS.

Habitual drunkenness, as a basis for divorce, is something more than the partaking of liquor and carrying the odor on the breath but does not distinguish between drunkenness in a public place and at home.

2. SAME—HABITUAL DRUNKENNESS—EVIDENCE.

In wife's suit for divorce, evidence *held*, somewhat weak but sufficient to sustain finding of habitual drunkenness on part of husband.

3. Same—Nonsupport—Evidence—Property Settlement.

    In suit for divorce between a childless couple, evidence *held,* ample to sustain finding that husband was guilty of nonsupport and to justify award to wife of parcel of realty valued at $900 paid for largely as a result of her own efforts from money she saved while contributing toward the support of herself and husband.

Appeal from Oakland; Doty (Frank L.), J. Submitted October 24, 1935. (Docket No. 11, Calendar No. 38,452.) Decided December 10, 1935.

Bill by Grace C. Greshow against William F. Greshow for divorce on grounds of nonsupport and drunkenness. Decree for plaintiff. Defendant appeals. Affirmed.

*Gerue & Lefurgy,* for plaintiff.

*Kinnane & Manary,* for defendant.

Wiest, J. This is an appeal by defendant from a decree of divorce, adjudging him guilty of "drunkenness and nonsupport," and awarding plaintiff real estate, purchased in her own name, and also the household furnishings.

The evidence of habitual drunkenness is weak, and defendant's liking for liquor was not lessened by the "home brew," prepared by plaintiff, and indulged in by both parties. Habitual drunkenness is something more than the partaking of liquor and carrying the odor on the breath. Defendant seems to draw a distinction between drunkenness in a public place and at home. There is no such distinction and while, as we have said, the evidence is somewhat weak, we are not prepared to overturn the finding of habitual drunkenness.

Nonsupport is well established by the proofs. The parties were married in June, 1923, have no

issue, separated in October, 1933, and, when not living with his or her relatives, plaintiff, for about eight years, worked out in order to earn a living. Defendant, some of the time, operated a truck, but appeared to think his duty well done in allowing plaintiff to be the breadwinner, to a large degree, for both. Plaintiff not only so served but, in the course of years, saved a little money from her earnings and, in 1932, bought three acres of land at the price of $45, in Arenac county, upon which she had a cheap house erected, paying for the material and labor, outside of some labor thereon by defendant. Defendant built a chicken house on the premises. The property is worth about $900. After living there for a short time plaintiff's money got down to $20 and she went to Oakland county and again earned her own living.

In the brief for defendant we are asked this question:

"Is the wife of a working man entitled to a divorce against such man for nonsupport, when he is without other means and unable to get employment on account of the depression and therefore unable to support his wife?"

We defer answer until we have such a case. The implication of financial distress does not comport with defendant's claim of money in his possession. We quote from his testimony:

"I didn't work from 1929 until 1932, but I had money besides that $613."
(He had paid, however, $400 of the $613 to his wife on $1,000 he had borrowed from her before the marriage.)
"*Q.* Where was it?
"*A.* In my pocket, where it belonged. As to whether I contributed towards the plaintiff's sup-

port, when we needed anything from the store, I went and got it. When she wanted anything from the store she went and got it. At times I gave her money.

"*Q.* She gave you money most of the time, didn't she?

"*A.* I wouldn't say that.

"*Q.* How much money did you have, that is what I want to know?

"*A.* Oh, I don't know just exactly what I did have.

"*Q.* It was a very few dollars you got from the birds, wasn't it?

"*A.* I had a little over $300.

"*Q.* Carry that around in your pocket?

"*A.* I carried more money than that in my pocket.

"*Q.* Where did it come from?

"*A.* Why, I earned it. I didn't steal it.

"*Q.* You said you only made $20 from 1929 to 1932?

"*A.* She said that. I didn't say that.

"*Q.* You said you didn't work?

"*A.* I didn't work.

"*Q.* Where did the money come from?

"*A.* I had lots of odd parts and stuff off from trucks and trailers, tarpaulins, like of that, birds and I had money in my pocket before I was throwed out of work. My truck was sold for a mechanic's lien. I didn't get any of that stuff off that truck. I had stuff from the Nash truck, spare parts, tires.

"*Q.* How much did you get out of it?

"*A.* Oh, let's see, three, possibly around $600. I said I had $300 at that time, yes, but I had money before I disposed of that stuff. What do you think I am, a broken man all the time? While we were down in Detroit from 1929 to 1932, I contributed according to our agreement, which was any time we went to buy anything, if she went to buy she'd pay for it, if I went to buy I'd pay for it. My wife paid

the rent at the Waring street property. She was working and she was willing to pay it. I had money at that time. I expect when I marry a woman I am going to make some effort to support her and I certainly did.

"*Q*. Your testimony is you had money but you let her go ahead and pay the rent?

"*A*. Yes."

Defendant seeks to have an interest decreed to him in the Arenac property.

Under the record in this case we think the decree entered in the court below was just.

The decree is affirmed, with costs to plaintiff.

POTTER, C. J., and TOY, NORTH, FEAD, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.